case of The Brooklyn [Case No. 1,938]. If the steamboat was negligent in her navigation in towing the barge, whether she was towing under a contract of towage or not, she was as much guilty of a tort towards the barge, if the barge was injured through such negligence, as she would have been towards a third and strange vessel, which should have been injured through such negligence. Her duty not to be guilty of such negligence was imposed by the law, and existed even though the service of towing was gratuitous. The barge being lawfully where she was, the steamboat owed a duty towards her independent of any contract of towage, and is liable for any damage to her, caused by negligent navigation amounting to a breach of such duty, to the same extent that the steamboat would be liable, for such negligent navigation, to a vessel which she was not towing; or to the barge if not towing her, and to the same extent that a third vessel would be liable, for negligent navigation, to the barge. Philadelphia & R. R. Co. v. Derby, 14 How. [55 U. S.] 468, 485, 486. It is, therefore, unimportant to inquire whether the steamboat was under a contract for towage, express or implied, either a new one or an extension, for the same consideration, of the original one, at the time of the injury to the barge.

It is impossible not to say that the steamboat was guilty of negligence. The fact that the sunken pier was there was known to her, and yet she ran the barge upon it. There was no vis major that drove the steamboat with the barge upon it. The case is not one of inevitable accident, from stress of weather or some sudden outside controlling force. If the steamboat could, because of any vessel or vessels anchored outside, only reach the destination of the barge by going through a narrow space close to the sunken pier, she must be regarded as having taken all risks of the striking of the barge, it having been at her option to attempt or to decline to tow the barge through such space, which was clearly visible. The fact that the existence of the sunken pier was known to those navigating the steamboat makes the running of the barge upon it conclusive evidence of negligence, under the circumstances, in the absence of proof of any vis major.

It is objected, that the libel does not aver negligence in the steamboat, and puts the cause of action against her solely on the ground that she was a common carrier. It is true, that the libel does not use the word "negligence." It charges that the existence of the sunken pier was known to the steamboat, and that, in place of avoiding it, the steamboat towed the barge upon it. The answer tenders the issue of negligence, by averring that the accident was not the result of any negligence on the part of those managing the steamboat. On these averments, and the evidence, the libellant will be allowed to amend her libel, by averring negligence, and thus accepting the issue tendered by the claimant, and the issue which was in fact tried.

Whether the injury was caused while the steamboat was going ahead, or while she was backing, is immaterial, as the case stands. On the proofs, it was for the claimant to show that the stick or pile which was driven into the barge was no part of the sunken pier, and that, if it was backed upon, such backing upon it was not the direct consequence of the striking of the sunken pier, while going ahead. The steamboat was wholly under the management and control of her own officers.

The defence, that the barge would not have been damaged if she had been less heavily loaded, or had been stronger, is not available. It is not shown that she was too heavily loaded for a barge which was to perform her voyage without being subjected to the blow inflicted on this barge, nor is it shown that she was not sufficiently strong for the ordinary purposes of the voyage she was on. Amoskeag Manuf'g Co. v. The John Adams [Case No. 338]. There must be a decree for the libellant, for the damage done to both vessel and cargo, with costs, with a reference to a commissioner to ascertain and report the amount of such damages.

[NOTE. For statement of further proceedings in this case, see Case No. 3,738.]

## Case No. 3,738.

### The DEER.

[10 Ben. 628.][1]

District Court, S. D. New York. Nov. Term, 1879.

MOTION FOR EXECUTION—LACHES—SETTLEMENT.

A suit was brought by a married woman as owner of a canal-boat against a steamboat to recover the value of the boat and her cargo, lost by negligence of the steamboat. A decree was made in her favor on March 4, 1871, for $2,737.09 damages and $331.61 costs. In May, 1871, an agreement to compromise was made between the proctors, and the stipulators paid $2,000 in settlement. The owners of the cargo were parties to the settlement and the husband of the libellant was present and consented to it and also her proctor, who has since died. In March, 1879, a motion for leave to issue execution against the stipulators was made on behalf of the libellant, on her affidavit that she did not authorize the settlement and received no part of the $2,000: Held, that the facts as to the settlement created so strong a presumption of acquiescence on the part of the libellant that it was not overcome by her affidavit, and that in any event she could only enforce the decree for the amount of her interest in it, and, as she had not shown what that was, her motion must be denied.

T. C. Campbell, for libellant.

J. Langtree, for stipulators.

CHOATE, District Judge. This is a motion for leave to issue execution to enforce a

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

decree against stipulators. The suit was brought by the libellant, Mary A. Corwine, to recover the value of a canal-boat and her cargo, lost through the fault of the Deer. [See Case No. 3,737.] A final decree was entered in favor of the libellant on the 4th day of March, 1871, for $2,737.69 damages and $331.61 costs. An appeal was taken but never proceeded further than the giving and filing of notice of the appeal. In the month of May, 1871, negotiations for a compromise of the suit were pending between the proctors representing the parties, and on the 18th day of said month the stipulators paid in setlement of the suit $2,000. It is proved that the owners of the cargo of the canal-boat, or those who had succeeded to their interest, were parties to this settlement; that it also was consented to by the proctors for the libellant, the law firm of Platt, Gerard & Buckley, and that the husband of the libellant, who had been the master of the canal-boat, was present at and consented to the settlement. The final decree does not show what part of said damages, if any, was awarded for the value of the canal-boat. The pleadings in the case cannot be found and there is no evidence produced to show what amount of damages this libellant claimed in her own right. Enough appears to show that she was suing on behalf of the owners of the cargo on board the canal-boat as well as on her own behalf. This motion was not made until the 28th day of March, 1879. The libellant has sworn that she did not authorize the settlement and received no part of the $2,000.

Under these circumstances the motion must be denied. It clearly would be improper and unjust towards the stipulators, even if the settlement was unauthorized by the libellant, to enforce the decree for any sum beyond the amount recovered by the libellant on her own account. Moreover, the extraordinary delay on her part, in connection with the facts that her husband was present at the settlement and that her proctors, especially through Mr. Buckley, now dead, took part in it, creates so strong a presumption of acquiescence on her part that I think it is not overcome by her testimony. In any event the burden is on her of showing what interest she had in the decree.

## Case No. 3,739.

### The DEER.

[1 Lowell, 95;[1] 2 Am. Law Rev. 101.]

District Court, D. Massachusetts. 1866.

PRIZE JURISDICTION—SERVICES BY STRANGERS—SALVAGE IN LIEU OF PRIZE-MONEY.

1. A court of prize has power to give salvage in lieu of prize-money to persons not of the navy, who have rendered valuable service in making a capture.

2. Four per cent. of the value of the prize and counsel fees granted to two persons who made known the rebel signals, and thus enabled the naval officers to make the prize.

Two men, who had escaped from Charleston and given themselves up to our fleet, made important disclosures concerning the signal lights used by the rebels, and thus enabled the navy to make the prize. This was done under a promise of payment if their services should prove to be of value. They now petition against the proceeds in the registry.

H. Flanders, for petitioners.

R. H. Dana, Jr., Dist. Atty., for naval captors and government, submitted the case without argument.

LOWELL, District Judge. The petitioners have rendered very useful services, and the only question is whether they can be paid out of the fund. The prize acts do not meet the case; but they are not exhaustive of the subject of prize. In The Dos Hermanos, 10 Wheat. [23 U. S.] 306, cited at the bar, noncommissioned captors were allowed one-half the value by way of salvage. The whole has sometimes been given: The Haase, 1 C. Rob. 286. So in case of recapture by the crew of the prize, or by the army, or by noncommissioned persons, salvage is awarded: The Hope, Hay & M. 216; The Helen, 3 C. Rob. 224; The Progress, Edw. 214.

That the petitioners ought to be rewarded cannot be denied, and that the government as well as the captors would be under a strong moral obligation to remunerate them is clear. In the case of the steamer Planter, which was run out of Charleston, with great skill and at great hazard, by the negro Robert Small and his associates, and delivered to our fleet, congress granted them one-half the value. 12 Stat. 904. As that vessel does not appear ever to have been taken before a prize court, the action of the legislature became necessary. But, in this case, the simple and practical mode of arriving at compensation, and the mode by which the burden will be properly distributed in exact proportion to the benefit conferred, is to make it a charge on the fund. And it comes fairly within the analogy of the cases cited, which hold those to be salvors who are not technically captors, but who have made or contributed to the capture. The amount of salvage suggested was five per cent. of the net value of the prize. I have concluded to award two thousand dollars to each petitioner, which is about four per cent. in all, and a reasonable counsel fee.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

DEFENDER, The (THORP v.). See Case No. 14,003.